------------------------------------------------------------- X

ARKADY SHEF,

                      Petitioner,

-against-

UNITED STATES OF AMERICA,

                      Respondent.

------------------------------------------------------------- X

06 CV 2091 (ARR) (CLP)

NOT FOR ELECTRONIC OR PRINT PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

By petition dated April 25, 2006, Arkady Shef moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Petitioner claims that (1) his guilty plea was not knowing, voluntary, and intelligent because the court did not inform the petitioner that he would be deported from the United States as a consequence of his conviction, and (2) his trial counsel was ineffective for (a) failing to advise the court during sentencing that petitioner was subject to automatic deportation if he was given a sentence of imprisonment for one year or more; (b) misadvising him as to the likelihood of deportation; and (c) failing to file a notice of appeal when instructed to do so. Because the petition, the records of the pertinent proceedings, and the affirmations of petitioner's counsel demonstrate conclusively that petitioner is not entitled to relief, no evidentiary hearing is warranted and the petition is denied in its entirely.

## BACKGROUND

On June 13, 2003, pursuant to a plea agreement with the government, the petitioner pleaded guilty before the court to count two of an indictment charging petitioner with theft and

1

embezzlement in connection with health care, in violation of 21 U.S.C. § 669. The court accepted petitioner's plea at the June 13, 2003 proceeding. On May 27, 2005, the court sentenced him to a term of 21 months imprisonment, followed by three years of supervised release. The court also granted the government's motion, pursuant to the plea agreement, for a dismissal of the two additional counts in the indictment.

## DISCUSSION

### 1. Validity of the Court's Acceptance of the Guilty Plea

Petitioner argues that the court's acceptance of his guilty plea violated Rule 11 of the Federal Rules of Criminal Procedure because the court failed to advise him that he would be automatically – as opposed to potentially – deported as a result of his plea. Rule 11 requires the court to "determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(2). In order to accept a plea of guilty, the court must personally address the defendant and inform him of certain consequences of his plea, in particular any maximum possible penalty, any mandatory minimum penalty, any applicable forfeiture, the court's authority to order restitution, and any obligation to impose a special assessment. See Fed. R. Crim. P. 11(b)(1).

"Certain possible consequences of a guilty plea are 'collateral' rather than direct and need not be explained to the defendant in order to ensure that the plea is voluntary." United States v. United States Currency in Amount of $228,536.00, 895 F.2d 908, 915 (2d Cir. 1990). It has been established Second Circuit precedent that the possibility of deportation as a result of a conviction should be considered a collateral consequence of the plea and therefore district courts were not

2

required to explain this possibility as part of a plea colloquy. See United States v. Couto, 311 F.3d 179, 189 (2d Cir. 2002) (citing United States v. Parrino, 212 F.2d 919, 921 (2d Cir. 1954); United States v. Santelises, 476 F.2d 787, 789-90 (2d Cir. 1973)). However, congressional statutes passed in the 1990s have made deportation "an essentially certain, automatic, and unavoidable consequence of an alien's conviction for an aggravated felony." Couto, 311 F.3d at 190 (citing the Immigration Act of 1990, Pub. L. No. 101-649, § 505; the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132; and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208). On this basis, the Second Circuit indicated – without deciding – that the non-discretionary nature of deportation may justify re-classifying deportation as a direct consequence of conviction of an aggravated felony about which a district court is required under Rule 11 to inform a defendant prior to accepting a plea. Id. at 190.

Nevertheless, the court finds that petitioner's claim that the court violated its obligations under Rule 11 has no merit. During the plea colloquy, the court asked Mr. Shef whether he understood that he "would be subject to being deported from the United States," and he answered "[y]es." (Plea Tr. at 11.) While the court did not inform the petitioner that deportation was an absolute certainty, the language used was sufficiently strong to put Mr. Shef on notice that deportation was a likely consequence of his sentence. Moreover, the plea agreement signed by Mr. Shef clearly indicates that deportation is one of the statutory penalties of the offense to which Mr. Shef pleaded guilty. (See Plea Agreement ¶ 1(g), submitted as Resp't Ex. B.) Thus, the record of the plea allocution and the plea agreement suffice to show that, at the time of his plea, Mr. Shef should have been aware that he faced – at a minimum – a serious risk of deportation. In

3

light of these facts, petitioner has presented no reason why any omission by the court to inform him that deportation was automatic constitutes a sufficient basis to compel the court to vacate his guilty plea.

In fact, the instant action is distinguishable from the cases cited by the parties in which motions to vacate guilty pleas were granted under § 2255 for Rule 11 violations related to representations regarding the likelihood of deportation. In United States v. Singh, 305 F. Supp. 2d 109 (D.D.C. 2004), the court did not address deportation during the plea allocution; the Assistant United States Attorney (AUSA) told the defendant prior to entering his plea that mail fraud was not a deportable offense; at sentencing, the AUSA stated that he would be entitled to a hearing prior to deportation; and the court, adopting this position, informed the defendant that there was a "chance" of deportation. Id. at 113-14. Under those circumstances, the District Court of Columbia found that the misrepresentations by the court and the government warranted vacating his guilty plea and sentence. Id. at 114-15. In Zhang v. US, 401 F.Supp.2d 233 (E.D.N.Y. 2005), the magistrate judge told the petitioner in that case that a felony conviction "could" result in deportation and the AUSA told that the court that the petitioner "agrees he [is] subject to possible post sentence deportation." Id. at 235. Judge Spatt found this to be an affirmative misrepresentation because deportation was, in fact, certain and, therefore, found the plea to be involuntary. Here, the court informed the petitioner that he "would be subject to deportation" – language that would not constitute a misrepresentation of the consequences of petitioner's conviction pursuant to his plea – and the government accurately included deportation among the statutory penalties of petitioner's offense enumerated in the plea agreement.

4

For these reasons, the court dismisses petitioner's claim of a Rule 11 violation as meritless.

## 2. Ineffective Assistance of Counsel

Petitioner brings a claim of ineffective assistance of counsel on three grounds. He argues that his trial counsel was ineffective for (a) failing to advise the court during sentencing that petitioner was subject to automatic deportation if sentenced to imprisonment for one year or more; (b) misadvising him as to the likelihood of deportation; and (c) failing to file a notice of appeal when instructed to do so.

In order to demonstrate ineffective assistance of counsel, the petitioner must satisfy the two prong test established in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a petitioner must demonstrate, first, that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," id. at 688, and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 698. A court need not decide both prongs of the Strickland test for ineffective assistance of counsel if a party has made an insufficient showing on one. See Id. at 697.

### (a) Failure to advise the court during sentencing that petitioner was subject to automatic deportation if given a sentence of a year or more

Petitioner claims that he was denied effective assistance of counsel because his attorney violated a duty to provide the court with mitigating information during sentencing, specifically

5

counsel's failure to advise the court that Mr. Shef would be automatically deported if given a sentence of a year or more.[1] This claim is without merit because petitioner has not demonstrated that any such omission meant that counsel's performance was constitutionally deficient or that it prejudiced the petitioner.

Petitioner has failed to substantiate his assertion that trial counsel's failure to inform the court of the immigration implications of sentencing his client to imprisonment for a year or more fell below prevailing professional norms so as to constitute ineffective assistance of counsel. Petitioner relies on Glover v. Washington, 531 U.S. 198, 205 (2001), to support the contention that an attorney has a duty to provide any information that may mitigate the sentence imposed by the court. However, the Supreme Court in Glover reached only the question of whether an error by counsel that resulted in a 6 to 21 month increase in sentence would be sufficient to constitute error under the second prong of the Strickland analysis. See Glover, 531 U.S. at 608. The Glover Court did not address the issue of when failure to provide specific information to the court during the penalty phase would fall below objective standards of reasonableness. Moreover, here, defense counsel presented to this court several other potential mitigating factors relating to defendant's rehabilitation that, as will be discussed below, provided the basis for a

---

[1] There is a dispute between petitioner and respondent as to whether Mr. Shef is subject to automatic deportation based on the length of his sentence or based on the dollar amount of the loss. Under current immigration law, deportation of non-citizens convicted of "aggravated felonies" are subject to what the Second Circuit has characterized "virtually automatic, unavoidable deportation." See Couto, 311 F.3d at 183-84. According to petitioner, his offense constitutes an aggravated felony as "a theft offense . . . for which the term of imprisonment [is] at least one year." See 8 USCS § 1101(a)(43)(G). Respondent, on the other hand, claims that the length of Mr. Shef's sentence is irrelevant to this classification because an offense may also be classified as an aggravated felony if it "involves fraud or deceit in which the loss to the victim or victims exceeds $ 10,000," see 8 U.S.C. § 1101(43)(M)(i), or an attempt to commit such an offense, see § 1101(43)(U). For the purposes of this opinion, the court assumes – without deciding – that the non-discretionary nature of deportation faced by Mr. Shef stems from the length of his sentence rather than the monetary amount.

6

substantial downward departure. In this context, omission of information regarding the sentencing threshold at which deportation of petitioner became mandatory is not a sufficient basis to find that counsel's performance fell below an objective standard of reasonableness.

More significantly, petitioner has failed to demonstrate that he was prejudiced by any error made by counsel. The calculation in the plea agreement of Mr. Shef's sentence based on the United States Sentencing Guidelines was a range of imprisonment from 30 to 37 months. (Plea Agreement ¶ 2.) Based on the mitigating evidence presented and the circumstances of the case, the court determined that a sentence of 21 months of imprisonment, with three years of supervised release, was appropriate. (Sentencing Tr. at 11-12.) Petitioner has not demonstrated that informing the court about the deportation sentencing threshold would have been likely to persuade the court to further reduce his sentence to below twelve months. Indeed, the court would not have done so.

Accordingly, the court finds that the records of the case are sufficient to establish that petitioner is entitled to no relief on this ground of ineffective assistance of counsel and, accordingly, the subclaim is dismissed.[2]

---

[2]Petitioner also makes the argument that counsel should have crafted a plea agreement that would have meant that his client would not be deported, such as a plea of guilty to two counts of the indictment with stipulated sentences below twelve months for each. However, considering that such a plea agreement would have to be approved by the government, petitioner has not substantiated a claim that failure to ensure such a plea agreement is objectively unreasonable or shown that petitioner would have been likely to receive such a deal and is thereby prejudiced.

**(b)    Inaccurate Immigration Advice**

Petitioner also contends that he was deprived of ineffective assistance of counsel because he received inaccurate immigration advice from his trial attorneys. In a declaration, Albert Dayan, Mr. Shef's retained counsel during his plea and sentencing, told the court:

> Considering that Mr. Shef has refugee status, I said to him that it was my opinion that the equities of his family and his refugee status could be given weight by the immigration court. I implied that it was probable that the equities would win out in his favor, or that people in his situation do not usually get deported. I did not tell him that a sentence of a year or more will lead to deportation as an aggravated felony.

(Dayan 2d Decl.). Angela Gorodischer submitted a declaration stating that Mr. Dayan told her and Mr. Shef that "refugees usually don't get deported" and that "[a]t no time did [Mr. Dayan] say that Arkady would be deported with no remedy if he received a sentence of a year or more." (Gorodischer Decl.) Anthony Lombardino, who also represented petitioner at the time of his plea, submitted an affirmation stating that petitioner was "made aware of the fact that deportation might be a consequence as a result of his pleading guilty."[3] (Lombardino Aff. ¶ 2.) On the basis of these declarations, petitioner contends that his counsel affirmatively misrepresented to him the likelihood of deportation and therefore, under the Second Circuit's holding in Couto, 311 F.3d 179 (2d Cir. 2002), trial counsel's representation was objectively unreasonable.[4]

---

[3] Mr. Lombardino also stated that ""[t]he facts of the case were fully discussed, the consequence of a conviction were fully discussed on numerous occasions and both he and his wife represented that they thought a plea was more advantageous to the defendant." (Lombardino Aff. ¶ 4.)

[4] The court notes that respondent contests the characterization of these statements as affirmative misrepresentations of the likelihood of deportation. In particular, based on the assertions made by Mr. Shef's wife, respondent points to the possibility that Mr. Shef could apply for withholding of removal under the regulations implementing the Convention Against Torture ("CAT"), see 8 C.F.R. § 208.17(a), and the restrictions on deporting a non-citizen to a country where his life or freedom would be at risk, see 8 U.S.C § 1231(b)(3).

8

The court does not need to reach this question, because, even if any misrepresentations were made to petitioner, the court finds that petitioner has failed to allege sufficient prejudice to establish ineffective assistance of counsel. In attacking the voluntariness of a guilty plea, a petitioner's satisfaction of the second prong of the Strickland test requires a showing that "but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." United States v. Hernandez, 242 F. 3d 110, 112 (2d Cir. 2001) (per curiam) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Petitioner did not submit an affidavit or assert in his petition that, had he better understood the immigration consequences of his plea, he would have insisted on going to trial. Nor, unlike the petitioner in Couto, 311 F.3d at 179, have his actions demonstrated such a willingness. In Couto, the Second Circuit found the petitioner's representation that she would have gone to trial had she understood the deportation consequences to be substantiated by her behavior, particularly her immediate motion to withdraw her guilty plea after learning the deportation implications. See Couto, 311 F.3d at 188 n.9. By contrast, petitioner pleaded guilty on June 13, 2003 and was sentenced on May 25, 2005, but he did not file the instant petition until April 25, 2006. At a minimum, both the court's inquiry at the plea allocution and the plea agreement should have put him on notice that deportation was a potential consequence of his plea; yet there is no record that petitioner sought to withdraw his plea in the nearly two-year period between his guilty plea and sentence.

Petitioner has made an insufficient showing that there was a reasonable probability to require the court to hold a hearing on this issue. In order to obtain a hearing,

> the application must contain assertions of fact that a petitioner is in a position to establish by competent evidence. Whether there is a genuine issue of material fact depends upon the sufficiency of those factual allegations. Airy generalities,

9

> conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing.

U.S. v. Aiello, 814 F.2d 109, 113-114 (2d Cir. 1987). Here, the only representation that petitioner would have gone to trial had he been better informed comes from the attorney representing petitioner for his § 2255 petition, who stated in a reply declaration that Mr. Shef "would never have taken this plea had he known the horrible and certain immigration consequences. He is a refugee from his country and the penal consequences were not as severe as the immigration consequences." (Richman Decl. & Arg. 6.) These conclusory assertions, on their own, are insufficient to establish that petitioner would have gone to trial rather than plead guilty, and neither petitioner nor his attorney points to any objective evidence in the record sufficient to support these assertions. The hearsay assertions from petitioner's wife that he was beaten in the Ukraine also do not constitute competent evidence that help petitioner to establish he was prejudiced by any misinformation by counsel. The dearth of evidence in the record supporting the assertions by petitioner's current attorney that Mr. Shef would have gone to trial combined with the lengthy gap between petitioner's plea and this petition persuade the court that petitioner's claim is properly dismissed without a hearing. Petitioner has failed to put forward any convincing evidence that could establish that there was a reasonable probability that, had he been differently advised as to the immigration consequences, he would have forgone the plea offer and proceeded to trial. Accordingly, this basis for petitioner's ineffective assistance of counsel claim is dismissed.

**(c)     Failure to File Notice of Appeal**

In his § 2255 petition, Mr. Shef asserts that he received ineffective assistance of counsel because his trial counsel failed to follow his specific request to file a notice of appeal. However, petitioner failed to file a sworn affidavit containing this allegation, and one of his trial attorneys, Mr. Lombardino, filed an affirmation indicating that he was never asked to file a notice of appeal.[5] (Lombardino Aff. ¶ 1). After being confronted with Mr. Lombardino's statement, the subsequent papers filed by petitioner's counsel do not address this subject. In addition, petitioner also fails to provide information to substantiate his assertion, such as which of his two attorneys he asked to file a notice of appeal, the time and means that he communicated this request, and the grounds on which he planned to appeal. After reviewing the record, the court finds no basis to credit petitioner's unsworn assertion that petitioner expressly communicated that he wanted his attorney to file a notice of appeal. Petitioner has not made sufficient factual allegations to merit a hearing. See Newfield v. United States, 565 F.2d 203, 207 (2d Cir. 1997). The court therefore dismisses petitioner's ineffective assistance claim on this ground as meritless.

---

[5] Mr. Dayan's declaration does not address this subject.

11

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2) (1996), no certificate of appealability will be granted. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated:	March 13, 2007
	Brooklyn, New York

SERVICE LIST:

*Attorneys for Petitioner*

Joseph R. Conway
LaRusso & Conway
145 Willis Avenue
Mineola, NY 11501

Labe M. Richman
Labe M. Richman, Attorney at Law
305 Broadway
Suite 100
New York, NY 10007

*Attorney for the Respondent*

Geoffrey Richard Kaiser
United States Attorneys Office
Eastern District of New York
United States Courthouse
610 Federal Plaza
Central Islip, NY 11722